FILED
2016 Nov-09  AM 10:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

|  |  |  |
|---|---|---|
| EDWARD L. COLLINS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:15-cv-02329-TMP |
| | ) | |
| HONDA MANUFACTURING OF ALABAMA, LLC, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

With leave of the court, the plaintiff filed his Third Amended Complaint on May 9, 2016.  (Doc. 39).  On May 23, 2016, defendants Honda Manufacturing of Alabama, LLC ("HMA"); American Honda Motor Co., Inc. ("American Honda"); and Honda North America, Inc. ("HNA") (together "defendants"), filed a Motion to Dismiss the Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b).  (Doc. 43).  The parties consented to dispositive jurisdiction by the undersigned (doc. 14); accordingly, the court enters the following Order.

## I.      Shotgun Pleading

The defendants argue that the plaintiff's Third Amended Complaint is an impermissible shotgun pleading.  In the Order granting the plaintiff leave to file a Third Amended Complaint, the court instructed the plaintiff to ensure compliance with Rules 8 and 10 of the Federal Rules of Civil Procedure, and to avoid filing a "shotgun pleading," as such documents are explained in Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015).  The court directed the plaintiff to allege discriminatory acts the plaintiff endured with "reasonable specificity."  The plaintiff filed his Third Amended Complaint within the time-period allowed by the court's order.

The plaintiff made sufficient clarifications in his Third Amended Complaint to overcome previous violations of the pleading guidelines set out in Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015).  Accordingly, the defendant's motion to dismiss on the grounds that the Third Amended Complaint is a "shotgun pleading" is DENIED.

## II.      Employment Relationship

The defendants assert that the plaintiff has not sufficiently alleged an employment relationship between himself and American Honda and HNA.

According to the defendants, neither American Honda nor HNA ever was the employer of the plaintiff, and the plaintiff has failed to alleged facts sufficient to demonstrate an employment relationship.  It is not disputed that the plaintiff was an employee of HMA.[1]  The dispute lies in whether HMA, American Honda, and HNA are a single or joint employer for purposes of Title VII liability.

The Eleventh Circuit addressed single or joint employer status in <u>McKenzie v. Davenport-Harris Funeral Home</u>, which states, in relevant part:

> Our role is to decide whether McKenzie presented sufficient evidence to create a genuine issue concerning whether Davenport-Harris and Protective should be treated as a single entity.  The predominant trend in determining whether two businesses should be treated as a single or joint employer under § 2000e(b) is to apply the standards promulgated by the National Labor Relations Board (NLRB).  *See Equal Employment Opportunity Comm'n v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984; *Childs v. Local 18, Int'l Bhd. Of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983); *Trevino*, 701 F.2d at 404; *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980); *Baker*, 560 F.2d at 392; *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala.), *aff'd*, 664 F.2d 295 (11th Cir. 1981).  The NLRB factors include: (1) interrelation of operations; (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.  The showing required to warrant a finding of single employer status has been described as "highly integrated with respect to ownership and operations."  *Fike*, 514 F. Supp. at 726.

---

[1] HMA has stipulated that it is plaintiff's sole employer.  (Doc. 43, p. 6).  The plaintiff contends, however, that HMA, HNA, and American Honda are a single employer.

834 F.2d 930, 933 (11th Cir. 1987).

In the Third Amended Complaint, the plaintiff asserts that HMA is an Alabama limited liability company employing more than 50 employees, and the plaintiff, for the relevant period, was employed by HMA.  (Doc. 39, ¶¶ 5-6).  According to the plaintiff, American Honda was the sole member of the HMA limited liability company.  (Doc. 39, ¶ 7).  As such, the plaintiff alleges that American Honda "is an affiliate, subsidiary, holding company, shell, and/or otherwise associated entity and/or alter-ego of HMA. . . ." Id.  The plaintiff further claims that HNA also is "an affiliate, subsidiary, holding company, shell, or otherwise associated entity and/or alter-ego of HMA."  (Doc. 39, ¶ 8).  According to the plaintiff, HMA is merely an instrumentality of American Honda and HNA and, therefore, the three companies operate, for all intents and purposes, as a single entity.  According to the plaintiff, "many of the HMA's, HNA, and American Honda's policies, procedures, benefits, and software are shared among and across their affiliated entities and employees."  (Doc. 39, ¶ 15).  American Honda is alleged to be the national parent company of HMA and HNA, "owns all or most of the capital stock of HMA," and, "through HNA, is responsible for the formation of HMA."  (Doc. 39, ¶¶ 16-17).

The defendants argue that the plaintiff failed to show that American Honda or HNA supervised the plaintiff's employment or played a role in any adverse employment decisions.   (Doc. 43, p. 8).   According to the defendants, the assertions by the plaintiff are too vague to establish such corporate relationships that constitute a single or joint employer.  When evaluating a motion to dismiss, the court is required to operate "on the assumption that all the allegations in the complaint are true."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1(2002).  Accordingly, the allegations set forth in the Third Amended Complaint regarding the operating structure of HMA, HNA, and American Honda present a sufficient question of fact regarding the status of those entities as employers that the defendant's motion to dismiss on this ground is DENIED.

### III.   Failure to State a Claim

The defendants assert that several of the plaintiff's allegations fail to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Before the Supreme Court decided Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a court could dismiss a complaint only where it was

clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, as set forth in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The well-established Rule 12(b)(6) standard set forth in Conley was expressly rejected in Twombly when the Supreme Court examined the sufficiency of a plaintiff's complaint and determined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555 (citations omitted).  The court went on to criticize Conley, stating that "[t]he 'no set of facts' language has been questioned, criticized, and explained away long enough" by courts and commentators, and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 562-63.  The

Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  The Supreme Court expanded on the Twombly standard when it decided Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), reiterating the Twombly determination that a claim is insufficiently pleaded if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Iqbal, 129 S. Ct. at 1949.  The Court further explained:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Iqbal, 129 S. Ct. at 1949-50 (citation omitted).  See also Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252 (11th Cir. 2009) ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss" and "the well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" (quoting Iqbal and Twombly)).

### A. Count Four: Reprisal for Engaging in Protected Activities

The defendants contend that the plaintiff failed to properly identify the legal theory under which he brings Count Four and that, in any case, the claim is duplicative of Counts Two and Eight and should be dismissed on that basis.  Count Four states that the "defendants' conduct, by and through HMA, as alleged above constitutes retaliation against [] Collins because he engaged in protected activities."  (Doc. 23, ¶ 105).  The plaintiff asserts that the "reprisal" claim in Count Four is based on retaliatory conduct taken against the plaintiff when he filed internal complaints and an EEOC charge after experiencing discrimination based on his race and sex.  (Doc. 45, p. 21).

Count Four does not set out specific protected actions in which the plaintiff participated and for which he was retaliated against, but the count does cite to several paragraphs in the fact section of the Third Amended Complaint for support:

paragraphs 1, 5-12, 22-46, 55-67, and 80. (Doc. 39, ¶ 103). The plaintiff cites the same paragraphs in Count Two: Retaliation-Race, to support his claim that he was retaliated against when he complained about being discriminated against based on his race. (Doc. 39, ¶ 85). Later, in Count Eight: Retaliation-Sex, the plaintiff cites paragraphs 1, 5-12, 22-25, 27-31, 33, 36-37, 39-46, and 80. (Doc. 39, ¶ 130). All of the paragraphs cited by the plaintiff in Count Eight also are cited in Count Two. The plaintiff does not explain in his response to the motion to dismiss why Count Four is different from Counts Two or Eight. Rather, Count Four appears to arise out of the exact same conduct at issue in Counts Two and Eight. Neither does the plaintiff provide the court with a separate legal or statutory basis giving rise to Count Four. Accordingly, the court agrees with the defendants that Count Four is duplicative of Counts Two and Eight and is due to be dismissed.

### B. Count Five: Hostile Work Environment – Title VII and Section 1981

The defendants assert that plaintiff's Count Five is due to be dismissed because the plaintiff failed to exhaust his administrative remedies with regard to his claim of a Hostile Work Environment due to racial harassment. Alternatively, the defendants argue that Count Five fails to meet the <u>Twombly</u> and <u>Iqbal</u> pleading

requirements, and is due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

The plaintiff asserts that the hostile work environment he was subjected to was based on his race.  He does not contend that the sex discrimination he experienced constituted a hostile work environment.  (Doc. 39, ¶¶ 107-115).  The plaintiff's hostile work environment claim is bought pursuant to Title VII and § 1981.  The plaintiff filed a Charge of Discrimination with the EEOC on June 30, 2015, which states as follows:

> I am Black.  I was hired by [HMA] on September 17, 2001, as a Process Associate.  I was later promoted to Engineer Associate.
>
> On April 13, 2015, I made a complaint to Human Resources that Doug East, Team Manager, was treating me differently than other White Engineer Associates.  On May 29, 2015, I was informed that Human Resources had concluded the investigation.  Later that day, Mr. East presented me a Performance Evaluation with a rating of "Below Expectations."  Prior to my complaint to Human Resources, I have received "Meets Expectations" evaluations.
>
> I believe I was discriminated against [because of] my race, Black[,] and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 39-4, p. 4).  On December 28, 2015, the plaintiff filed another Charge of

Discrimination with the EEOC which states as follows:

> Honda has engaged in systemic, company-wide discriminatory
> treatment of not paying me, an African-American, male employee
> holding the title of Engineering Associate (a Honda classified "Level
> II" position), the same pay as it pays for women and Caucasian male
> employees, similarly situated, and performing a job that is
> substantially equal to  mine.  These events have taken place over the
> duration of my employment with Honda.

(Doc. 39-4, p. 10).

The Eleventh Circuit has described the claim of hostile work environment under

Title VII as an "environment in which 'a series of separate acts . . . collectively

constitute one "unlawful employment practice."' As opposed to '[d]iscrete acts

such as termination, failure to promote, denial of transfer, or refusal to hire,' a

hostile work environment claim addresses acts 'different in kind' whose 'very

nature involves repeated conduct,' such as 'discriminatory intimidation, ridicule,

and insult.'  Thus, these 'claims are based on the cumulative effect of individual

acts.'"  McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal

citations omitted).  In the plaintiff's EEOC claims, he states that he was "treated

differently" than Caucasian employees.  He does not specify in what way this

different treatment revealed itself, but he does not *only* claim that he was subject to a discrete act or acts such as termination.  The claims alleged in the EEOC claim were sufficient to put the defendants on notice of a possible hostile work environment claim.  The court finds that the plaintiff exhausted his administrative remedies with regard to his Title VII hostile work environment claim.

The defendants also argue that the plaintiff's hostile work environment claim was insufficiently pleaded under the Twombly and Iqbal standards of pleading.  In Count 5, the plaintiff states that he "was subjected to harassment" that was "motivated by [his] race," and that he was treated differently from Caucasian employees.  (Doc. 39, ¶¶ 109-110).  He cites fact paragraphs 1, 5-12, 22-46, 55-67, and 80 in support of his claim.  Of the paragraphs cited by the plaintiff, paragraphs 1, and 5-12, are jurisdiction statements and descriptions of the parties.  In paragraph 24, the plaintiff asserts that East, Collins' supervisor, "has made derogatory and racially charged comments" to at least one other employee about Collins.  (Doc. 39, ¶ 24).  The plaintiff also asserts that he was "openly belittled and mocked in the presence of other employees" and, specifically, was called "ignorant" by East several times in front of other employees.  (Id. at ¶¶ 26, 34).  The plaintiff also alleges that he was generally denied promotions and training and

was "written-up" for a minor violation of the attendance policy in retaliation for complaining about racially discriminatory behavior.

As stated previously herein, at this stage in the proceedings, the court is required to operate "on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, *supra*. With that understanding, the plaintiff has pleaded a sufficient question of fact regarding whether he was subjected to a hostile work environment. Therefore, the defendants' motion to dismiss is due to be denied as to Count Five.

### C. Count Six: Equal Pay

The defendants argue that Count Six is due to be dismissed for failure to state a claim. (Doc. 43, p. 12). The Equal Pay Act ("EPA") states, in relevant part:

> No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate

differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

According to the defendants, Count Six consists only of "bald allegations" that female employees were paid more than male employees, and lacks sufficient factual support to support an EPA claim.  (Doc. 43, p. 12).  At the relevant time, the plaintiff was employed by HMA as an Engineer Associate.  He asserts that different pay scales and ranges are applied to employees with the same job title based on the "level and step" of the employee.  (Doc. 39, ¶ 71).  Engineer positions involve equal work, skill, effort, and responsibility, but the defendant's application of the level and step system results in higher pay for female employees.  (Id. at ¶¶ 72-73).   He asserts that at least one female Engineer Associate "has less experience, skill, and training than Collins, but receives a higher compensation." (Id. at ¶ 24).  He also claims that he makes less money than similarly situated white female employees with the same job title who are known as "Doug's Angels," a nickname given to them by the plaintiff's supervisor.  (Id. at 78).

Again, the court must take the plaintiff's factual assertions as true.  The plaintiff stated that he and "Doug's Angels" are employed as Engineer Associates, which is

the same occupation that requires similar skills, work, and responsibility.   He further claims that these female employees earn more money than he does due to the defendants' discriminatory application of the level and step system, which serves to put female employees at a higher pay grade, even when these employees have less experience, skill, or training than the plaintiff.   Based on the plaintiff's factual allegations, taken as true, the defendants' motion to dismiss Count Six of the Third Amended Complaint is due to be denied.

### D. Count Nine: Intentional Infliction of Emotional Distress and Outrage

Count Nine sets out a claim under Alabama law for intentional infliction of emotional distress, also known as the tort of outrage.   (Doc. 39, p. 26).   The plaintiff asserts that the defendants "acted in a manner in which they intended to cause Collins distress and/or knew the actions would cause Collins distress."   (Id. at ¶ 138).   The elements of intentional infliction of emotional distress, also known as the tort of outrage, are as follows:

> (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4). . . the distress was severe.  With respect to the conduct element, this court has stated

that the conduct must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

Thomas v. Williams, 21 So. 3d 1234, 1237-38 (Ala. Civ. App. 2008), quoting Gunter v. Huddle, 724 So. 2d 544, 547 (Ala. Civ. App. 1988); see also American Road Service Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1980). "[T]he tort of outrage is 'a limited remedy to be applied only in flagrantly egregious circumstances.'" Gunter v. Huddle, 724 So. 2d 544, 547 (Ala. Civ. App. 1988), quoting Turner v. Hayes, 719 So. 2d 1184, 1187 (Ala. Civ. App. 1997), aff'd in pertinent part, 719 So. 2d 1190 (Ala. 1998).

> The tort of outrage . . . is so limited that this court has recognized it in regard to only three kinds of conduct (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989). See also Michael L. Roberts and Gregory S. Cusimano, *Alabama Tort Law*, § 23.0 (2d ed. 1996).

> *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). This is not to say, however, that the tort of outrage is viable in only the three circumstances noted in *Potts*. Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the

16

> boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. *See O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011).  It is clear, however, that the tort of outrage is viable only when the conduct is " 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' "  *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010)(quoting *Inmon*, 394 So. 2d at 365).

<u>Little v. Robinson</u>, 72 So. 3d 1168, 1172-73 (Ala. 2011).

The plaintiff asserts that he was paid inequitably in comparison with similarly situated female and/or white employees.  He also asserts that he was denied developmental and training opportunities, reassigned to an undesirable location, given undesirable job duties, threatened with a lower performance rating, denied job opportunities, and belittled and mocked in the presence of other employees. These allegations, as negative as they are, do not rise to the level of outrageous conduct, and the plaintiff has not stated sufficient factual basis to assert a claim that the conduct of which he complains is *so egregious* that it is intolerable in civilized society.  Even presuming the allegations to be true, they do not rise to the level of an outrage claim.  Accordingly, the defendants' motion to dismiss is due to be granted as to plaintiff's Count Nine.

### E. Count Ten: Negligent and/or Wanton Hiring, Retention, Training, and Supervision

In Count Ten of the Third Amended Complaint, the plaintiff asserts that the defendants violated their duty of care to the plaintiff by negligently and/or wantonly hiring employees who behaved in a discriminatory manner, particularly the plaintiff's supervisor, Doug East, and that the defendants negligently and/or wantonly retained such employees or failed to train and supervise them. The plaintiff does not dispute that, pursuant to Alabama law, a claim of negligent and/or wanton hiring, retention, training, and supervision must be predicated on an underlying tort committed by a co-employee. (Doc. 45, p. 26). Judge Smith addressed the requirement in <u>McCaulley v. Harvard Drug Group, LLC</u>, which states, in pertinent part:

> [The defendant] argues that the claim must be dismissed because it is not based upon an independently actionable Alabama tort. Persuasive authority from every federal district court in Alabama supports [the defendant's] argument.
>
> First, in <u>Thrasher v. Ivan Leonard Chevrolet, Inc.</u>, 195 F.Supp. 2d 1314 (N.D. Ala. 2002), this court granted summary judgment on a claim for negligent hiring, training, supervision, and retaliation based on similar allegations in the context of a pregnancy discrimination claim. The court stated:
>
>> In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must

establish that the allegedly incompetent employee committed a common-law, Alabama tort.  <u>Stevenson v. Precision Standard, Inc.</u>, 762 So. 2d 820, 824 (Ala. 1999) (citing <u>Big B, Inc., v. Cottingham</u>, 634 So. 2d 999 (Ala. 1993)).  As Alabama does not recognize a common-law tort for sex discrimination in employment, the Court finds that Plaintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common-law tort.

<u>Thrasher</u>, 195 F. Supp. 2d at 1320 (footnote omitted).

. . .

Decisions from the Middle and Southern districts of Alabama are in agreement.  *See, e.g.*, <u>Guy v. Alabama Power Co.</u>, No. 2:13cv8-MHT, 2013 WL 3929858, *2 (M.D. Ala. July 29, 2013) ("[I]t is clear that the employee's wrongdoing must be based on state, and not federal, law.  Otherwise the tort of negligent or wanton hiring, training, and supervision could be a corridor through which federal laws prohibiting various types of conduct by employees could be incorporated into state law as a privately redressable requirement on employers to stop their employees from engaging in such conduct.") (alteration supplied); <u>Rabb v. Georgia Pacific, LLC</u>, No. CA 09-0420-C, 2010 WL 2985575, *16 (S.D. Ala. July 26, 2010) ("because Alabama does not recognize a common-law tort for race discrimination in employment, this Court finds that Rabb cannot maintain an action for negligent supervision 'based upon conduct that is employment discrimination, but does not support a common-law tort.'") (quoting <u>Thrasher</u>, 195 F. Supp. 2d at 1320).

Here, plaintiff's claim for negligent hiring, training, supervision, and retention is based entirely on the same alleged conduct that supports her claims for race discrimination, hostile work environment, and retaliation under Title VII and 42 U.S.C. § 1981.  Plaintiff does not allege any *independent* conduct that would support an Alabama tort law claim.  Accordingly, her negligent hiring, training, supervision, and retention claim must be dismissed.

McCaulley v. Harvard Drug Group, LLC, 992 F. Supp. 2d 1192, 1198-99 (N.D. Ala. 2014) (emphasis in original) (internal footnotes omitted).

In the instant case, the plaintiff attempts to rest his claim for negligent and/or wanton hiring, training, supervision, and retention solely on the Alabama tort of intentional infliction of emotional distress, also known as the tort of outrage.  As determined above, the plaintiff's factual allegations, taken as true, are not sufficient to support an outrage claim.  Because the plaintiff does not allege an independent, actionable Alabama tort, his claim of negligent and/or wanton hiring, training, supervision, and retention cannot stand.  The defendants' motion to dismiss is due to be granted as to plaintiff's Count Ten.

### F. Count Eleven: Alabama Workers' Compensation Act

In the final count of his Third Amended Complaint, the plaintiff asserts a claim pursuant to § 25-5-8 of the Alabama Workers' Compensation Act.  (Doc. 39, p. 28).  The plaintiff argues that, though the defendants "had immediate legal and actual notice or knowledge of" the plaintiff's work-related injuries and his claim for workers' compensation benefits, the defendants "have refused and declined to

pay Collins benefits due under the Alabama Workers' Compensation Act."  (Doc. 39, ¶ 160).  As relief under this claim, the plaintiff seeks benefits under the Workers' Compensation Act, fifteen percent of unpaid installments, and further benefits.  The plaintiff also asks the court to "adjudicate Plaintiff's degree of disability and to award Plaintiff compensation in the correct amount based on his average weekly wage."  (Doc. 39, ¶ 155).

The plaintiff argues that the court should exercise § 1367 supplemental jurisdiction over this action.  The defendants argue, however, that supplemental jurisdiction is inappropriate as to the workers' compensation claim because the claim is not subject to a common nucleus of operative fact and, in any event, would have to be separated for trial purposes, as workers' compensation claims are not subject to jury trials.  Section 1367 of the United States Code provides that supplemental jurisdiction is appropriate "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1376(a).

In the instant case, the plaintiff claims that he was injured on the job while working at the HMA facility in Lincoln, Alabama.  The plaintiff immediately

reported to the on-site medical clinic, where he was treated with Tylenol and told to return to work.  He asserts that he reported to work following the injury for approximately 20 days before he was sent by HMA to see a physician.  The plaintiff experienced temporary total disability and is permanently disabled to some degree.  The plaintiff asks the court to "adjudicate Plaintiff's degree of disability and to award Plaintiff compensation in the correct amount based on his average weekly wage and to have his attorney's fee approved by this Court as [] allowed by law."  (Doc. 39, ¶ 155).  The plaintiff's workers' compensation claim is not "part of the same case or controversy," as the plaintiff's other remaining claims.

The plaintiff's state law claims of outrage and negligent and/or wanton hiring have been dismissed by the court.  The plaintiff's remaining federal claims are: Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *et seq*., 42 U.S.C. § 1981, *et seq*.; Retaliation – Race; Section 1981a – Discrimination; Hostile Work Environment – Title VII and Section 1981; Equal Pay; Family Medical Leave Act – 29 U.S.C. § 2617(a); and Retaliation – Sex.  The only remaining claim that *may* be factually similar to the workers' compensation claim is the plaintiff's claim under the Family Medical Leave Act

("FMLA").[2]  However, in determining an FMLA claim, it is not at issue the extent to which the defendant was injured or his current disability, but only whether his rights under the FMLA were afforded to him.  Furthermore, the facts surrounding the plaintiff's workplace injury are tangentially related, at best, to his claims of discriminatory and retaliatory behavior.  Therefore, the court finds that the plaintiff's workers' compensation claim is not subject to supplemental jurisdiction under 28 U.S.C. § 1367(a), as it does not "form part of the same case or controversy."

Furthermore, even if the plaintiff's workers' compensation claim is a part of the same case or controversy, it is a specialized question of state law that is best answered in state court, and therefore subject to the exception to supplemental jurisdiction, which states as follows:

> (c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[2]   Under the same FMLA count, the plaintiff argues both that his rights under FMLA were interfered with and that he was retaliated against.  (Doc. 39, ¶¶ 127-128).

(3) the district court has dismissed all claims over which it has
original jurisdiction, or

(4) in exceptional circumstances, there are other compelling
reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Although workers' compensation claims are not novel, the

determination of temporary or permanent disability and the amount payable to a

claimant is a complex issue that normally falls within the purview of the state

courts, and such a decision is better left to the state courts.

Because the plaintiff's workers' compensation claim is not part of the same

case or controversy and, even if it were deemed to be so, is a complex issue of state

law, the plaintiff's workers' compensation claims is due to be dismissed without

prejudice.

## <u>CONCLUSION</u>

In conclusion, the defendants' Motion to Dismiss the Plaintiff's Third Amended

Complaint is due to be DENIED to the extent that the defendant argues that the

Third Amended Complaint is a shotgun pleading and that the plaintiff has failed to

establish an employment relationship with the defendants and as to Counts Five

and Six.  The motion is due to be GRANTED as to: Count Four, Count Nine,

Count Ten, and Count Eleven.   A separate Order will be entered contemporaneously herewith.


      **DONE** and **ORDERED** on November 9, 2016.

                                      _____

                                      T. MICHAEL PUTNAM
                                      UNITED STATES MAGISTRATE JUDGE